# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————

UNITED STATES of AMERICA )
)
)
v. )    **Criminal No.**
)    **10-40003-FDS**
PAUL V. BURDULIS, )
)
Defendant. )
)

———————————————————————

## AMENDED MEMORANDUM AND ORDER
## ON MOTION TO SUPPRESS

SAYLOR, J.

This is a prosecution for possession of child pornography. Defendant Paul Burdulis has moved to suppress evidence seized by the government from computers at his home, chiefly images of child pornography, and the fruits of those searches. Burdulis alleges that the searches and seizures violated the Fourth Amendment of the United States Constitution because the three warrants authorizing them were (1) overbroad and did not describe the items to be seized with particularity; and (2) did not establish probable cause that the evidence sought would be found in those locations. For the reasons stated in this opinion, the motion will be denied.[1]

## I.    Factual Background

Around the beginning of May 2009, a man handed a note to a 13 year-old boy at a golf course in Auburn, Massachusetts. (*See* Ex. A at 26). The note included the name "Paul", a web-

---

[1] In its original order on March 14, 2011, the Court granted defendant's motion to suppress in part. On March 29, the government filed a motion to reconsider. Because the Court is persuaded that its previous order was erroneous, it now issues this amended order denying defendant's motion in its entirety.

based e-mail address, a phone number, and the words "CALL ME!" (*Id.*).

The Auburn Police Department began an investigation. (*Id.* at 26–27). They matched the phone number on the note to defendant and determined that he was a registered Massachusetts level-2 sex offender. (*Id.* at 8–9).[2] A detective then created an undercover web-based e-mail account, "tyler1995golfer," and posed as a thirteen-year old boy named "Tye" in e-mails he sent to the address listed on the note. (*Id.*). The undercover officer sent the first e-mail on Wednesday, May 6, 2009. He heard back from "Paul" the next day; he then received approximately thirty e-mails from Paul between Friday, May 8, and Monday, May 11, 2009. (*Id.* at 9). The earliest e-mails discussed having met each other on the golf course and a mutual interest in baseball. (*Id.* at 9–10). The subjects of pornography, exchanging photos of themselves, and meeting in person intermixed throughout their conversations for the rest of the weekend.

By Saturday, Paul said he would try to send pornography to Tye and began to suggest that they meet in person. (*Id.* at 13). When Tye recounted acting out pornography while he and a friend "were on top of each other" at a sleepover, Paul responded, "wish I could come to your sleep over LOL." (*Id.* at 15). In a subsequent conversation that day, Paul mentioned that he was going to take a bubble bath, and added, "maybe sometime you would join me in the bubble bath? LOL would be nice if you wanted, but up to you." (*Id.* at 18). Paul also wrote, "I would love to meet you again, but you know we have to be careful about that." (*Id.* at 19). When Tye indicated that he wanted Paul to send him "naughty pics," Paul asked Tye whether he had

---

[2] E-mails later sent to the address on the note resulted in "Paul" giving the officers a month and date of birth, which officers indicated matched the month and date of birth of defendant. (*Id.* at 12, 24, 27).

"naughty pics" of himself. (*Id.* at 16). After Tye told Paul that he could not find a picture of himself to send Paul, Paul said: "I have a camera on my phone for now, but that's all I have unless you come over and I use my webcam." (*Id.* at 19). That same day, Paul sent Tye two photographs: one of a cat on a blanket and one of a naked male torso in a bathtub, centered on the exposed penis. (*Id.* at 16–17). After sending the images, Paul wrote, "That was not a 'full hard' pic as I guess you could tell but I was in the bathtub at the time LOL." (*Id.* at 17).

On Tuesday, May 12, Detective Lyman obtained a search warrant from the Worcester District Court (the "First Warrant"). (Ex. A, Search Warrant Cover Page).[3] The warrant affidavit included the e-mail exchanges between Paul and Tye and was based largely on the contents of those exchanges. (Def. Br. at 2). Detective Lyman cited specific e-mail conversations as evidence that defendant was sending the e-mails from his residence. (Ex. A at 27–28). He indicated that he believed evidence would be obtained from defendant's home computer system because defendant had mentioned he could use his web camera to take pictures of Tye and because a web camera "is a camera device usually attached to a home computer system." (*Id.*). The affidavit highlighted in bold the crimes for which the warrant was being sought:

> [B]ased upon my training, knowledge, education, and experience, and based upon the facts, circumstances, investigation and reasonable inferences detailed in this affidavit, probable cause exists to believe that the items designated for search . . . contain(s) [sic] evidence, contraband and/or instrumentalities of the following criminal violations of the Laws of the Commonwealth of Massachusetts presently under investigation:
> **Chapter 265: Section 26C      Enticement of child under age 16**
> **Chapter 272: Section 28        Matter harmful to minors, dissemination**

(*Id.* at 28). Pursuant to the First Warrant, officers seized a cell phone, a pocket personal

---

[3] This warrant issued on May 12, 2009. It will be referred to as the "First Warrant" even though it replaced a previous, unexecuted warrant that had an out-dated address.

computer, a computer camera, an external hard drive, a recovery disk, a number of data storage CDs and disks, a thumb drive, and two laptops.  (Def. Br. at 3).

On May 14, 2009, Detective Lyman applied to the Worcester District Court for another warrant.  (Ex. B, Application for Search Warrant).  That warrant application sought authority to search the computer-related items that had been seized under the First Warrant.  (*Id.*).  That warrant was obtained on May 14 (the "Second Warrant").  The Second Warrant authorized an electronic search of the items seized under the First Warrant.  (*Id.* at 1–2).

On May 19, 2009, Officer Joseph Murphy of the Electronic Crimes Task Force began to search the seized thumb drive for the two pictures Paul sent to Tye.  (Def. Br. at 4).  Officer Murphy indicated that he "began a cursory forensic review of the contents [of the thumb drive] looking for the two JPG's . . . described in the affidavit."  (Ex. C at 1).  Officer Murphy explained, "[u]sing a gallery view option we opened up all JPG's contained on the thumb drive to scroll through them 10 at a time.  Almost immediately we pulled up a gallery view of approximately 10 photo images which we immediately believed to be child pornography based on our training and experience."  (*Id.*)  Officer Murphy discontinued further examination of the seized evidence and informed Detective Lyman of the "illegal contraband" he had viewed on the thumb drive.  (*Id.* at 1–2).

On May 21, 2009, Detective Lyman applied to the Worcester District Court for a further warrant (the "Third Warrant") authorizing search of the seized devices for evidence of possession of child pornography.  (Ex. D at 1–4, 8).  The Third Warrant listed the items seized under the First Warrant and authorized their search for computer data files containing sexually explicit images in which a child is "actually or by simulation" engaged in sexual intercourse or sexual

contact, or in which a child is depicted in a pose involving a "lewd exhibition of unclothed genitals . . . ." (*Id.* at 1–4). Based on the material obtained in these searches, defendant has been charged with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). (Def. Br. at 5).

## II. <u>Analysis</u>

The Fourth Amendment's Warrants Clause provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "Any search intruding upon [an individual's] privacy interest must be justified by probable cause and must satisfy the particularity requirement, which limits the scope and intensity of the search." *United States v. Bonner*, 808 F.2d 864, 867 (1st Cir. 1986); *see also United States v. Graham*, 553 F.3d 6, 15 (1st Cir. 2009). Defendant contends that each of the three warrants relied upon by the government were "overbroad and lacked particularity," and also "were not supported by probable cause to believe that the evidence sought would be found in the places to be searched." (Def. Br. at 5). Defendant bears the burden of proof to show that a search performed pursuant to a warrant was unconstitutional. *Jarabo v. United States*, 158 F.2d 509, 515 n.3 (1st Cir. 1947) (noting that "the burden of proving that evidence has been unlawfully obtained rests upon the party objecting to it"); *see also United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (noting that "the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression."); *United States v. Adams*, 221 F. Supp. 2d 18, 22 n.4 (D. Me. 2002) (noting that defendant bears burden of proving illegality of a warrant).

Defendant challenges the validity of all three warrants. Because the Court finds that the propriety of the search turns on the validity of the First Warrant, however, the Court focuses its

analysis there.

## A.     Whether Defendant Has Standing to Challenge the Search

Before turning to the First Warrant, the Court briefly addresses the government's contention that defendant lacks standing to challenge the searches and seizures. The Fourth Amendment protects the "right of the people to be secure in their . . . *houses* . . . against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV (emphasis added). The government does not question whether defendant has a reasonable expectation of privacy in his home, but argues that defendant has not acknowledged that the apartment they searched was his residence. *See Smith v. Maryland*, 442 U.S. 735, 740 (1979) (discussing expectation of privacy). "Having failed to show an expectation of privacy in the place searched, Defendant has failed to establish standing to challenge the search and his motion to suppress should be denied." (Gov. Br. at 5–6 n.1).

The government cites no authority requiring a defendant to stipulate to his control of or residence at the place being searched when such control or residence is the basis for the validity of the warrant. The validity of the government's warrants depends on information in the affidavit indicating that defendant sent the e-mails from his home and that the apartment they searched was his home. (*See* Ex. A at 28–29). The government may not rely on this information to establish the nexus between the alleged crimes and the place to be searched, and then require defendant to provide independent evidence of this fact in order to challenge the validity of that warrant. *Cf. United States v. Thompson*, 630 F. Supp. 2d 139, 144 (D. Mass. 2009) (considering defendant's contention that the warrant was invalid for lack of probable cause because the government had not established that the place where they searched for drugs was his home). The Court finds that

defendant has standing to challenge the validity of the warrants based on representations in the affidavit that the warrant was issued to search defendant's home.

**B.     The First Warrant**

Defendant raises two objections to the First Warrant:  first, that the First Warrant violated the Fourth Amendment's "particularity" requirement; and second, that it was not supported by probable cause.

**1.     Whether the First Warrant was Overbroad**

The Fourth Amendment's particularity requirement focuses on two concerns:  "one is whether the warrant supplies enough information to guide and control the agent's judgment in selecting what to take, and the other is whether the category as specified is too broad in the sense that it includes items that should not be seized."  *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999) (citations omitted).

 Defendant contends that the First Warrant was overbroad because it "authorized officers to search for items that should not have been subject to seizure."  (Def. Br. at 6).  Specifically, defendant argues that the warrant is an invalid "general warrant" because it authorized the seizure of "[a]ll objects capable of storing digital data of any form," and because it "allowed officers to look at any document Burdulis had and to recover a significant amount of information unrelated to the crime being investigated."  (*Id.* at 6–8).

**a.     Seizure of All Electronic Media**

Defendant first contends that the First Warrant is invalid for allowing the seizure of "[a]ll objects capable of storing digital data of any form."  (Def. Br. at 6).  The First Warrant authorized officers to search defendant's home and seize, among other things, central processing units, digital

cameras, thumb drives, floppy disks, compact disks, and digital video disks (DVDs). (Ex. A at 1–6). The warrant classified objects capable of storing digital media as "Computer Systems." (*Id.* at 3). The warrant also authorized officers to seize user's manuals, computer access codes, and evidence of control, use or ownership of the computer systems. (*Id.* at 4). Pursuant to this warrant, officers seized a cell phone, a pocket PC, a computer camera, an external hard drive, a recovery disk, a number of data storage CDs and disks, a thumb drive, and two laptops. (Def. Br. at 3).

A warrant authorizing seizure of a suspect's home computer equipment and digital storage media for later off-site electronic search is not overbroad or unreasonable, as long as the probable-cause showing in the warrant application demonstrates a "sufficient chance of finding some needles in the computer haystack." *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999). As the *Upham* court explained:

> As a practical matter, the seizure and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images . . . . [A] search of a computer and co-located disks is not inherently more intrusive than the physical search of an entire house for a weapon or drugs . . . . [I]f the images could be easily obtained on-site, there might have been no justification for seizing all computer equipment because it would include equipment with no connection to the crime. But it is no easy task to search a well-laden hard drive by going through all of the information it contains . . . .

*Upham*, 168 F.3d at 535. *See also United States v. Grimmett*, 439 F.3d 1263, 1267 (10th Cir. 2006) (holding that warrant authorizing search and seizure of "any and all computer hardware, . . . software," computer equipment, and computer storage devices was not overbroad).

As defendant points out, the Ninth Circuit has emphasized the need for "greater vigilance" by judicial officers to ensure that the process of identifying data subject to seizure does not

become "a vehicle for the government to gain access to data which it has no probable cause to collect." *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010). In *Comprehensive Drug Testing*, federal agents executed a warrant to obtain drug testing records for ten individuals from a third-party service provider not suspected of wrongdoing, but seized multiple computer systems containing data from hundreds of individuals not named in the warrant. *Id.* at 1166. Having deliberately seized the personal information of individuals not named in the warrant, these agents then disregarded search protocols imposed by the issuing judge to protect this personal information. *Id.* at 1167. In addition, the agents failed to inform the judge that the service provider had agreed to keep the data intact, thus creating the false impression that unless the data were seized at once it would be lost. *Comprehensive Drug Testing, Inc.*, 621 F.3d at 1178 (Kozinski, J., concurring).

Defendant has produced no evidence that the First Warrant was so broad as to allow the seizure of information for people unrelated to the probable cause in the warrant, was issued in reliance on misinformation regarding the need for immediate seizure, or was executed in breach of the protocols specified in the warrant. As the Ninth Circuit pointed out, "[w]rongdoers and their collaborators have obvious incentives to make data difficult to find." *Comprehensive Drug Testing*, 621 F.3d at 1176. When seizing a defendant's home computer systems, there is simply "no way to be sure exactly what an electronic file contains without somehow examining its contents." *Id.* If there was probable cause to believe that evidence of solicitation of a minor and dissemination of matter harmful to a minor would be found on defendant's home computer systems, a warrant authorizing the government to seize all of defendant's home computer systems and digital storage media was not overbroad. *See Upham*, 168 F.3d at 535 (upholding warrant

authorizing seizure of, among other things, "any and all computer software and hardware, . . . computer disks, [and] disk drives . . . ").

Defendant also points to no authority requiring the government to abstain from seizing his home computer systems and storage media simply because it cannot state with particularity which piece of evidence will be found on which component of his system. "[T]he prohibition of general searches cannot be confused with a demand for precise *ex ante* knowledge of the location and content of evidence related to the suspected violation." *Crespo-Rios*, 623 F. Supp. 2d at 202 (citing *United States v. Meek*, 366 F.3d 705, 715 (9th Cir. 2004)). Instead, "the determination of the requisite particularity must be 'flexible' and the description of items to be seized need only be "as specific as the circumstances and the nature of the activity under investigation permit." *Id.* (citing *United States v. Blair*, 214 F.3d 690, 697 (6th Cir. 2000)). The proper question is whether it was reasonable to provide a more specific description of the items at that point in the investigation. *Id.* Defendant has provided no reason to expect the police to be able to identify which of the components of the home computer systems and media he used to accomplish the alleged crimes or to store evidence of them. Thus, the Court concludes that the limitation in the warrant to seizure of components located in defendant's home was "as specific as the circumstances" permitted.

**b.    Search and Seizure of Digital Information**

Defendant also argues that the First Warrant was overbroad because it "allowed officers to look at any document Burdulis had and to recover a significant amount of information unrelated to the crime being investigated." (Def. Br. at 8). The warrant authorized the officers to "explore all directories, sub-directories and file names with dates and times." (*Id.*). It

authorized the officers "to SEARCH therein for and SEIZE . . . [a]ny computer data file containing information regarding the creation and maintaining [of] pornographic material," copies of the two photos Paul sent Tye in the e-mails, and "[a]ny computer data files named or bearing the text" of the two photos Paul sent to Tye. (Ex. A at 5–6). The warrant also authorized officers to seize any evidence of defendant's use of an Internet service provider to connect to his e-mail provider, and any evidence of control, use or ownership of the seized computer systems. (*Id.* at 6). Defendant challenges the forensic search of the computer systems as overbroad for failing to tailor the search to target the photos and e-mails specifically listed in the affidavit and for broadly authorizing the seizure of "pornographic material."

Starting with the first argument, defendant contends that the scope of the warrant should have been limited to "traces of the e-mails and pictures that were exchanged" between Paul and Tye. (Def. Br. at 6–7). Defendant argues that a "targeted search" of these e-mails and pictures was possible because the police already had their file names, dates, times, and content. (*Id.* at 7). The warrant did identify each picture with a specific "JPG file name," and identified the e-mail conversations by the e-mail addresses involved. (Ex. A at 4–5). Beyond defense counsel's conclusory statements, however, there is no evidence in the record as to the feasibility of obtaining all relevant evidence through such a search. *See United States v. Allen*, 573 F.3d 42, 52 (1st Cir. 2009) (noting that a district court is not required to accept "unsupported factual assertions in [a defendant's] memorandum of law," where the memorandum does "not contain any record citations that would have confirmed these allegations."). Furthermore, the "failure to impose a search protocol prohibiting a visual scan of image files" does not compel a finding that a warrant was overbroad. *United States v. Farlow*, 2009 WL 4728690, at *5–7 (D. Me. Dec. 3,

2009) (explaining that *Upham* favors a case-by-case analysis of how a warrant was executed over requiring that warrants specify "how" the search must be conducted); *see United States v. United States v. Upham*, 168 F.3d 532, 537 (1st Cir. 1999) ("The warrant process is primarily concerned with identifying *what* may be searched or seized—not how—and *whether* there is sufficient cause for the invasion of privacy thus entailed.").  In fact, even if the absence of such a protocol allowed the government to "open and briefly examine each computer file to determine whether it is within the description recited in the warrant," this absence still does not make it an impermissible general warrant.  *United States v. McNamara-Harvey*, 2010 WL 3928529 at *4 (E. D. Pa. Oct. 5, 2010) (citing *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents*, 307 F.3d 137, 149 (3d Cir. 2002)).

Instead of requiring issuing courts to impose a specific search protocol in the warrant, the "preferable approach is to examine the circumstances of each case, to assess the validity of the computer search protocol [actually performed], to determine whether the police strayed from the authorized parameters of the search warrant, and to hold the police to constitutional standards in the context of a motion to suppress." *Farlow*, 2009 WL 4728690, at * 6.  In *Farlow*, the court cited evidence that "[t]he only reasonable way for an examiner to locate most of the copies of a particular image is to do it visually," and held that visual searching was "about the narrowest definable search and seizure reasonably likely to obtain the images." *Farlow*, 2009 WL 4728690, at *7 (denying motion to suppress child pornography discovered on defendant's computer while searching visual image files for a non-pornographic photograph he had a sent a supposed minor while soliciting her for sex).  As in *Farlow*, defendant has introduced no evidence that it was unreasonable for the government to examine visually the image files on the seized devices in order

to obtain the images Paul sent to Tye and to obtain all evidence and instrumentalities of the crimes enumerated in the affidavit that were stored in defendant's computers and storage media. *See United States v. Grimmett*, 439 F.3d 1263, 1267 (10th Cir. 2006) (holding that opening every folder on a hard drive and focusing on image file extensions was an appropriate means of searching). Without affirmative evidence of Officer Murphy's deliberate detour from reasonable search parameters based on the probable cause described in the warrant, defendant's claim that the warrant was overbroad for failure to require a "targeted search" fails.

Defendant's claim also fails because the warrant contemplated the collection of evidence beyond just the images and e-mails mentioned by name. For example, the warrant authorized seizure of evidence of control, use, or ownership of the computer systems. (Ex. A at 4, 6). It also authorized seizure of any evidence of defendant's use of an Internet service provider to connect to the e-mail providers mentioned in the e-mail, any software used to create any of the files mentioned in the warrant, or records of those files' creation, receipt, or modification. (*Id.* at 6). As defendant points out, the warrant also authorized officers to search the computer systems for "computer data file[s] containing information regarding the creation and maintaining of pornographic material." (*Id.* at 5). Defendant ignores the variety of evidence contemplated by the warrant by focusing on the government's ability to limit its search to particular e-mails and images.

Although defendant acknowledges that the police were "seeking evidence that Burdulis had been communicating with the undercover agent," his argument assumes that this evidence must take the form of the particular images and e-mails the government already knew about. (Def. Br. at 7). However, once the affidavit established probable cause to believe that defendant

had used his computer systems to carry out the crimes alleged in the affidavit and that they contained evidence of these crimes, the government need not anticipate the exact form and content of this evidence. *See Crespo-Rios*, 623 F. Supp. 2d at 202 (citing *United States v. Meek*, 366 F.3d 705, 715 (9th Cir. 2004)). Defendant points to no authority for his assumption that because a warrant authorizes the seizure of particular images and e-mails it cannot also authorize seizure of other evidence. The Court rejects defendant's claim that the warrant is overbroad for failing to limit the search by "targeting" only the specific e-mails and images named in the warrant.

### c. Search and Seizure of Legal Pornography

Defendant next contends that the warrant was overbroad in that it "permitted officers to search for any type of pornography, even that which can be legally possessed." (Def. Br. at 11) (citing *Miller v*. California, 413 U.S. 15 (1973)). This argument fails because the search was not justified by the criminal nature of any pornography. It was reasonable to conclude, based on defendant's offers to send pornography to Tye and their extensive discussion about the kind of pornography at issue, that there was a substantial basis for believing that defendant was using pornography as an instrument to entice Tye to meet with him and to send him pictures. The warrant did not need to distinguish between legal and illegal pornography, because the pornography could be seized regardless of its legality as evidence of the crimes enumerated in the warrant. *See United States v. Clough*, 246 F. Supp. 2d 84, 87 (D. Me. 2003) (noting that where items protected by the First Amendment are seized "not because possessing or using [them] was unlawful, but only if the material is related to" another crime, the First Amendment does not call for heightened scrutiny under the Fourth Amendment's particularity requirement). The existence

14

of pornography on defendant's computer was evidence of enticement regardless of any inherent criminality, just as the presence of large quantities of money or cellular telephones on a person suspected of selling drugs can be evidence of intent to distribute. The telephones and money, like the pornography, are subject to seizure because of their relation to the crime at issue, not because their possession is prohibited. Thus, defendant's distinction between legal and illegal pornography is unavailing.[4]

### 2. Whether There Was Probable Cause to Search for Pornographic Materials

Defendant next challenges the validity of the First Warrant by arguing that it was "not supported by probable cause to search for pornography or child pornography." (Def. Br. at 9). To be valid, a "warrant application must demonstrate probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched—the so-called 'nexus' element." *United States v. Ribeiro*, 397 F.3d 42, 48 (1st Cir. 2005) (quotations omitted); *see also United States v. Rodrigue*, 560

---

[4] In its previous order, the Court also reasoned that "the warrant did not authorize the government to seize all pornography of any type, but only pornography that was evidence of crimes enumerated in the warrant." (Order at 18). Upon reconsideration, the Court has concluded that this qualification is neither practical nor required by law. As the government points out in its motion to reconsider, there is no practical way for officers to tell the difference between pornographic material that is evidence of the enumerated crimes and pornographic material that is not. Nor is this a case where the class of material to be seized is so general that the warrant would be overbroad without additional limitations based on the enumerated crimes. *Compare United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009) (warrant authorizing seizure of "any and all information and/or data" was overbroad) (computer searches must "affirmatively limit the search to evidence of specific federal crimes or specific types of material"), *and United States v. Farlow*, 2009 WL 4728690, at *5 (D. Me. Dec. 3, 2009) (citing *Otero*) (warrant authorizing seizure of "computer records or data," without limitation to crimes enumerated in warrant, would be overbroad), *with United States v. Upham*, 168 F.3d 532, 536 n.1 (1st Cir. 1999) (warrant authorizing seizure of images "of minors engaging in sexually explicit conduct" was not overbroad), *and United States v. Kavalchuk*, 2011 WL 1236045, at *10 (D.N.H. Mar. 31, 2011) (overbreadth under *Otero* is a concern only where a warrant "permits a search for anything—from child pornography to tax returns to private correspondence"). Here, the term "pornographic materials" is sufficiently specific and narrow that it does not run afoul of the concerns raised in *Otero*.

F.3d 29, 33 (1st Cir. 2009). The nexus element can be inferred from the type of crime, the nature of the items being sought, the extent of an opportunity for concealment, and normal inferences as to where a criminal would hide evidence of such a crime. *United States v. Thompson*, 630 F. Supp. 2d 139, 143 (D. Mass. 2009) (quoting *United States v. Feliz*, 182 F.3d 82, 88 (1st Cir. 1999). Applying the nexus requirement requires "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Given the wide variety of factual contexts in which the probable cause requirement applies, this is necessarily a fact-dependent inquiry. In essence, however, the nexus requirement is satisfied if a person of reasonable caution has reason to believe that evidence of a crime will be found at the place to be searched. *Rodrigue*, 560 F.3d at 32.

In reviewing a search warrant, the Court must pay "great deference" to the magistrate's determination of probable cause and should not upset that determination unless the magistrate lacked a "substantial basis" for concluding that the search would uncover evidence of wrongdoing. *United States v. Santiago*, 389 F. Supp. 2d 124, 127 (D. Mass. 2005) (citing *Gates*, 462 U.S. at 236); *see also Thompson*, 630 F. Supp. 2d at 144 (state magistrate's determination of probable cause is entitled to great deference); *United States v. Grimmett*, 439 F.3d 1263, 1267 (10th Cir. 2006) (same). A reviewing court should reverse the previous judicial determination "only if it was arbitrarily made." *United States v. Wright*, 2010 WL 841307, at *10 (E.D. Tenn. Mar. 3, 2010) (quoting *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009)) (internal quotation marks omitted). The sufficiency of an affidavit is evaluated under a "totality of the circumstances test." *United States v. Syphers*, 426 F.3d 461, 465 (1st Cir. 2005). In so doing,

"search warrants and affidavits should be considered in a common sense manner, and hyper-technical readings should be avoided." *Id.*

Probable cause is a less stringent standard than proof by a preponderance of the evidence and is "more akin to "reasonable cause." *Thompson*, 630 F. Supp. 2d at 144 (citing *United States v. Melvin*, 596 F.2d 492, 495 (1st Cir. 1979). It requires only a "fair probability that contraband or evidence of a crime will be found in a particular place." *Frechette*, 583 F.3d at 379; *Grimmett*, 439 F.3d at 1268. For warrants authorizing seizure of pornography or other "materials presumptively protected by the First Amendment, the validity of warrants should be evaluated under the same standard of probable cause used to review warrant applications generally." *United States v. Brunette*, 256 F.3d 14, 16–17 (1st Cir. 2001) ("This assessment is no different where First Amendment concerns may be at issue") (quoting *New York v. P.J. Video, Inc.*, 475 U.S. 868, 875 (1986)).

The government contends that any child pornography seized should not be excluded because the First Warrant authorized a search of the digital media seized from defendant for pornography of any type, including child pornography. (Gov. Br. at 17 n.5). Defendant contends that because the First Warrant "provided no reason to believe that there would be pornography, whether adult or child, on Burdulis's electronic media, all evidence seized pursuant to these warrants" must be suppressed. (Def. Br. at 12–13) (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)). Defendant also contends that the First Warrant lacked probable cause because it did not "specify that the search [was] for child pornography." (*Id.* at 11). Both of defendant's claims challenge the "nexus" element of probable cause.

Defendant's first contention—that there was "no reason to think that Burdulis had any

pornography"—is against the weight of the evidence. As the government points out, Paul "offered to send Tye 'pornos,' asking Tye what kinds of pornography he liked and wanted." (Gov. Br. at 11) (citing Ex. A at 14). Tye responded to Paul's offer in the very next e-mail by telling Paul that he loves "pics of . . . girls doing it with guys." (Ex. A at 15). In the same e-mail, Tye told Paul that he and a friend at a sleepover "were on top of each other acting like the pornos on tv." (*Id.*). Paul responded to this e-mail by saying, "do you want pics of me or just like internet pics or what? . . . wish I could come to your sleepover LOL. Can you send me anything too before you have to leave?" (*Id.*). Tye then asked for "s[ome] interne[t] stuff." (*Id.*). Paul asked whether Tye wanted "'naughty' pics or just regular ones," and added "(can't be naughty with the cat . . . she's 'fixed' LOL)." (*Id.*). When Tye asked for the "naughty pics," Paul responded by asking, "do you have naughty pics of yourself? LOL," told Tye he was sending him one that was "sorta naughty," and then sent him the picture centered on the exposed penis of a man in a bathtub. (*Id.* at 16–17). During their conversations, Paul also invited Tye to join him in a bubble bath and told Tye that he would take pictures of him with his web camera when they met at Paul's house. (*Id.* at 18–19). When discussing what kind of picture Paul should send of himself, Tye suggested that Paul should "surprise me wink wink lol." (*Id.* at 13). Paul responded: "hehehe I will surprise you if you surprise me too wink wink." (*Id.*). There was thus substantial reason to believe that defendant possessed pornography: he offered to send some to Tye, discussed what type to send, and was plainly using it to entice Tye into meeting with him and into sending him pictures.

The argument that the First Warrant did not "specify that the search [was] for child pornography" also holds little weight. Defendant relies on *United States v. Crespo-Rios*, in which

the court suppressed child pornography obtained under a warrant because the warrant explicitly named child pornography as one of the "parameters of the search," but the affidavit "contained no allegation or suggestion of child pornography." 623 F. Supp. 2d 198, 203 (D.P.R. 2009).

*Crespo-Rios* does not hold that child pornography can never be evidence of other crimes, but only that no such connection had been demonstrated in the warrant under consideration. In *Crespo-Rios*, the warrant affidavit alleged that defendant solicited sex from a minor and sent her obscene material. *Id.* at 203. The trial court held that the agent "offered no assertion in the affidavit of any rational nexus between the purported criminality and child pornography." *Id.* (citing *United States v. Adkins*, 169 Fed. Appx. 961, 967 (6th Cir. 2006) (high incidence of child molestation by child pornography convicts does not demonstrate child molester is likely to possess child pornography)). Because the agents provided probable cause for the crimes of solicitation and dissemination, but designed and requested a search for unrelated evidence of an entirely different crime, that unrelated evidence had to be suppressed.

Here, the affidavit provided sufficient information to infer a rational nexus between the enumerated crimes and "pornographic materials," including both adult and child pornography. As a result, defendant's reliance on *Crespo-Rios* is misplaced, and the First Warrant is not invalid under the "nexus" element of probable cause.[5]

_____

[5] In its original order, the Court determined that "[a]lthough the affidavit provided some reason to believe that there was child pornography on defendant's computer and some nexus between child pornography and the crime of enticement, the scope of the First Warrant did not encompass child pornography generally without regard to its relationship to the crimes enumerated in the warrant." (Order at 31). This limitation is analogous the Court's prior limitation, discussed above, on the types of adult pornography that could be seized pursuant to the warrant. For the same reasons, the Court finds that its previous limitation on the types of child pornography that may be seized is neither practical nor required by law. It is true that, under *Brunette*, an affidavit for a warrant to search for evidence of the crime of child pornography, if based on allegedly pornographic images, must include an actual image of child pornography or a detailed description of such an image. *United States v. Brunette*, 256 F.3d 14, 20 (1st Cir. 2001). However, the First Warrant does not run afoul of *Brunette* for two reasons. First, *Brunette* does

### 3.    Whether There Was Probable Cause to Search all Digital Media

Finally, defendant contends that there was no probable cause to believe that evidence of enticement of a minor and dissemination of matter harmful to a minor would be found on "every computer-related item in Burdulis' apartment." (Def. Br. at 10). Although officers had reason to believe the e-mails were sent from defendant's home and that he took the pictures he sent Tye using his web camera, defendant contends that they had no reason to believe that "any . . . evidence relevant to the state law crimes being investigated [was] stored anywhere other than on the computer or in the webcam." (*Id.* at 10–11). The government responds that "human behavior teaches that disks and the like are precisely the media used to store information" and that the two pictures Paul sent "could reasonably be stored on any of such media." (Gov. Br. at 16).

Detective Lyman's affidavit, which was incorporated into the First Warrant, provided probable cause to seize all of defendant's home computer systems and digital storage media. Detective Lyman indicated that he believed defendant was sending the e-mails from his residence because Paul (1) told Tye that he "just got home" and was about to watch a Red Sox game, (2) told him that he had "just moved into a new place," (3) invited him over to his new place, and (4) wrote that he "was going to have a bubble bath." (Ex. A at 27–28). Detective Lyman indicated

---

not apply where, as here, there are other indicia of probable cause. *Brunette*, 236 F.3d at 19. Second, as discussed above, there was probable cause to believe both that defendant committed the crimes enumerated in the warrant and that pornogrpahy (including child pornography) was evidence of those crimes. Under the circumstances, there is no reason to treat child pornography differently from any other kind of evidence. *See United States v. Grimmett*, 439 F.3d 1263, (10th Cir. 2006) (warrant authorizing search for child pornography as evidence of crime of "sexual exploitation of a child" was valid); *cf. United States v. Underwood*, 2010 WL 5313766, at * (W.D. Ky. Dec. 20, 2010) (warrant authorizing search for child pornography as evidence of other crime was invalid where evidence that defendant had requested nude images from child was not presented to the magistrate); *United States v. Crespo-Rios*, 623 F. Supp. 2d 198, 204 (D.P.R. 2009) (warrant authorizing search for child pornography as evidence of other crimes was invalid where "the affidavit contained no allegation or suggestion of child pornography").

in the affidavit that he believed that evidence would be obtained from defendant's home computer system because defendant had mentioned he could use his web camera to take pictures of Tye if he would come over, and that a web camera "is a camera device usually attached to a home computer system." (*Id.*). He submitted that his training, experience, and investigation in this case led him to believe that there was evidence of the crime of enticement of a child under age 16 (Mass. Gen. Laws ch. 265, § 26C) and dissemination of matter harmful to minors (Mass. Gen. Laws ch. 272, § 28) on defendant's home computer system and related digital storage devices. (*Id.* at 28). The information in the affidavit clearly demonstrated probable cause to believe that defendant used his home computer systems and accessories in the commission of the enumerated crimes.[6]

Because defendant used his home computer systems and accessories to commit the crimes and to store evidence of them, there was probable cause to seize and search all digital storage media. *See United States v. Crespo-Rios*, 623 F. Supp. 2d 198, 202 (D. Puerto Rico 2009) ("There can be no doubt that the allegations contained in the affidavit, which included Defendant's use of his computer system and accessories to engage in sexually explicit conversations with the alleged presumed minor and the sending via web cam of obscene material to the presumed minor, established probable cause to seize and search Defendant's digital media." ). Once the government established probable cause to search defendant's home computer

---

[6] The affidavit also indicated that at about 10:00 p.m. on Monday, May 11, 2009, Paul sent Tye another e-mail, in which he indicated that he bought a new computer that day because of technical problems that had interrupted their conversations that weekend. (Ex. A at 29). The purchase of a replacement computer would support an inference that defendant would be transferring data to his new computer, quite likely using the digital storage media seized under the warrant. Similarly, with a computer replacement in process, it would be reasonable to infer that there was an increased risk that evidence would be lost or destroyed if only some of the computer systems and digital storage media were seized.

systems, it was not required to anticipate where defendant stored which pieces of evidence.  *See id.* at 202 ("[T]he prohibition of general searches cannot be confused with a demand for precise *ex ante* knowledge of the location and content of evidence related to the suspected violation."). The clerk-magistrate's decision to authorize a seizure and search of all digital storage media had a substantial basis because the warrant application established a nexus between the evidence they expected to find and defendant's home computer systems.

In sum, the First Warrant was valid, and any evidence obtained pursuant to it will not be suppressed.

### C.  <u>Applicability of the Plain-View Doctrine</u>

Even if a search for child pornography was not authorized under the First Warrant, the government was entitled to seize the images of child pornography under the plain-view doctrine. *See United States v. Williams*, 592 F.3d 511, 521 (4th Cir. 2010) (holding that plain-view doctrine applies to child pornography discovered during a lawful search of a computer's image files for evidence of other crimes); *United States v. Wong*, 334 F.3d 831, 838 (9th Cir. 2003) (same); *United States v. Farlow*, 2009 WL 4728690, at *7 (D. Me. Dec. 3, 2009) (same); *United States v. Crespo-Rios*, 623 F. Supp. 2d 190, 204 (D.P.R. 2009) (noting same in dicta).  The plain-view doctrine has three requirements: (1) the officer must be lawfully in the place where the seized item was in plain view; (2) the item's incriminating nature must be "immediately apparent"; and (3) the officer must have had "a lawful right of access to the object itself."  *Horton v. California*, 496 U.S. 128, 136–37 (1990); *see also United Stats v. Antrim*, 389 F.3d 276, 283 (1st Cir. 2004).

As discussed above, the First Warrant authorized the government to search the contents of

the seized computer systems for evidence of enticement and unlawful dissemination, including pornographic materials and the two images sent to Tye by Paul. The First Circuit has elected to treat computer searches identically to physical searches of the home. *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999) ("[A] search of a computer and co-located disks is not inherently more intrusive than the physical search of an entire house for weapons or drugs."). Under this analogy, a search for particular types of images "would permit [a] . . . search of any 'container' that might reasonably have the images concealed 'inside.'" *Id.* at 536. Consistent with this, courts in the First Circuit and elsewhere have held that a warrant authorizing a search for images requires the searcher to open all image files, at least briefly, to determine their contents. *See id.* at 534, 536 (upholding a search for image files on a computer "by going through all the information it contains," including previously deleted information); *Farlow*, 2009 WL 4728690, at *7 (because search for a single image authorized agents to open all image files, child pornography discovered over the course of the search was admissible under plain-view doctrine); *Crespo-Rios*, 623 F. Supp. 2d at 203 (forensic examination of computer for non-pornographic evidence would have turned up child pornography images, which then would have been admissible under plain-view doctrine); *see also Williams*, 592 F.3d at 521 (To conduct a search for images and documents, "the warrant impliedly authorized officers to open each file on the computer and view its contents, at least cursorily, to determine whether the file fell within the scope of the warrant's authorization."); *United States v. Mann*, 592 F.3d 779, 782-83 (7th Cir. 2010) (search for particular images authorized a broad search of all files, and child pornography discovered during that search was admissible); *United States v. Giberson*, 527 F.3d 882, 890 (9th Cir. 2008) (search for fake I.D. photographs allowed agent to search all images and photographs, and child

pornography discovered during the course of the search was admissible under plain-view doctrine); *United States v. Underwood*, 2010 WL 5313766, at * (W.D. Ky. Dec. 20, 2010) ("[B]ecause the forensic search cannot distinguish between images of child pornography and images [authorized under the warrant], all images on the computer would have been reviewed by the examiner.").

Here, the First Warrant authorized a search for and seizure of specific images. Thus, pursuant to the warrant, the officers had a lawful right to view files that could contain images on defendant's digital storage media.[7] Because the search for images was authorized by the First Warrant, the prohibited nature of the child pornography images would have been "immediately apparent," and the searching agent had a "lawful right of access" to the discovered images, the child pornography images would be admissible under the plain-view doctrine.

### D.    The Second Warrant

Defendant also challenges the validity of the Second Warrant. He contends that its supporting affidavit omitted any description of the "nature of the e-mails between Paul and Tye" and also omitted any indication that "Burdulis sent pornographic pictures" to Tye. (*Id.* at 9). Defendant argues that the Second Warrant's affidavit "explains the course of the searches but . . . [gives no] reason to believe that pornography would be found on Burdulis's computer. (*Id.*).

The government, however, does not rely on the Second Warrant to justify the search. (Gov. Br. at 4) ("[T]he first warrant and the first affidavit should govern the disposition of

---

[7] Indeed, the record indicates that the initial search method used by the officers involved opening all of the images files on defendant's digital storage media and examining their contents ten at time in a "gallery" view. (Ex. C at 1). In any case, the exact search methodology employed by the agents is not relevant, as long as the officers opened only those files they had reason to believe contained evidence enumerated in the First Warrant. "The warrant process is primarily concerned with identifying *what* may be searched or seized—not how—and *whether* there is sufficient cause for the invasion of privacy thus entailed." *Upham*, 168 F.3d at 537 (emphasis in original).

Defendant's claims."). As discussed above, the First Warrant authorized officers to search defendant's home, seize "[a]ll objects capable of storing digital data of any form . . . [and] to transport the same to a secure location and, there, to SEARCH therein for and SEIZE" computer data files containing evidence of the enumerated crimes. (Ex. A at 3–5); *see also Upham*, 168 F.3d at 536 (upholding seizure of child pornography under warrant that explicitly authorized seizure of computer and diskettes from defendant's home and the unlawful images located "inside" them). Because the Court finds that the First Warrant authorized search of defendant's digital storage media, the Court does not reach the question of whether the Second Warrant was based on probable cause or sufficiently particular.

### E.     The Third Warrant

Finally, defendant challenges the validity of the Third Warrant because it "does not include any of the images [of child pornography] or any description of the images." (Def. Br. at 13). Defendant is correct that under federal law "the bald assertion of an officer that an image [is] child pornography is insufficient to support a warrant" to search for evidence of possession of child pornography because the judicial officer has "no way to evaluate whether [such] images were . . . criminal." (*Id.* at 14) (citing *United States v. Brunette*, 256 F.3d 14, 17, 20 (1st Cir. 2001)). "A judge cannot ordinarily [determine whether images are prohibited] without either a look at the allegedly pornographic images, or at least an assessment based on a detailed, factual description of them." *Brunette*, 256 F.3d at 18. The government does not dispute that *Brunette* is controlling precedent in this circuit or that the Third Warrant failed to establish probable cause under *Brunette*. (Gov. Br. at 17 n.5).

The usual remedy for searches made with a defective warrant is suppression of the

evidence obtained by the search. *See United States v. Woodbury*, 511 F.3d 93, 99 (1st Cir 2007). However, evidence obtained pursuant to an invalid warrant should not be suppressed "when the officer acted in objective good faith in executing the warrant." *United States v. Robinson*, 359 F.3d 66, 69 (1st Cir. 2004) (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)). The government agrees that an officer's failure to provide the issuing judge with images of child pornography or a detailed description of the images does not qualify for the *Leon* good-faith exception when the warrant seeks evidence of possession of child pornography. (Gov. Br. at 17 n. 5) (citing *Brunette*, 256 F.3d at 20). The government argues, however, that the good-faith exception should apply here because the state magistrate who issued the Third Warrant is not bound by First Circuit precedent and because Massachusetts law does not specifically require that the judicial officer evaluate the images of alleged child pornography. (Gov. Br. at 17 n.5).

The government's argument fails, however, because the *Leon* good-faith exception does not allow federal prosecutors to rely on evidence of child pornography obtained by state law enforcement officers under state search warrants for possession of child pornography if the warrants did not comply with the attach-or-describe rule of *Brunette*. *See United States v. Syphers*, 426 F.3d 461, 463–64, 466 (1st Cir. 2005) (analyzing motion to suppress child pornography in a federal prosecution under *Brunette's* attach-or-describe requirement when the images were obtained under state court search warrants by state officers). "[T]he Fourth Amendment, not federal rules or state law, governs the admissibility of evidence obtained by state officers but ultimately used in a federal prosecution." *Id.* at 468 (quoting *United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994)). Thus, the government's argument that the good-faith exception to the exclusionary rule should apply in this case is unpersuasive.

Furthermore, the good-faith exception does not apply here because a search conducted with significant involvement of federal officers must comply with federal law. *United States v. Brewer*, 588 F.3d 1165, 1171 (8th Cir. 2009) (stating rule and holding that federal involvement was negligible where local officers filed for the warrant and executed the warrant, and only one federal official was involved in providing "technical guidance."). In the present case, federal officers had significant involvement in the state investigation. Det. Lyman, who led the investigation and applied for all three search warrants, was a detective with the Auburn Police Department, but was also a Special Deputy United States Marshal. (*See* Ex. A at 8). United States Secret Service Agents accompanied state law enforcement officers to defendant's address when he was arrested, had defendant's computer systems in their possession at the time the Third Warrant was sought, and informed state officers of the results of the forensic search performed by Officer Murphy. (Ex. B at 6; Ex. D, Application for Search Warrant; Ex. C at 1–2). Because of the significant involvement of federal officers in the investigation when the warrants were obtained, the government may not rely on the good-faith exception to avoid suppression of evidence obtained pursuant to the Third Warrant.

Nevertheless, because the images that defendant seeks to suppress are admissible under the First Warrant, the invalidity of the Third Warrant does not require suppression in this case.[8]

---

[8] In its original order, the Court determined that agents were entitled to seize only the images discovered before they obtained the Third Warrant. This conclusion was premised in part on an erroneous assumption that the officers' intent was relevant to whether the search was within the scope of the First Warrant. There is some confusion among the circuits on this score. Following *United States v. Carey*, 172 F.3d 1268 (10th Cir. 1999), a number of courts have held that the agents' intent during a computer search is relevant to determining whether they were acting within the scope of the warrant. *See United States v. Lucas*, 2011 WL 1775685, at *10 (6th Cir. May 11, 2011) (search was within scope of warrant because there was "no evidence that [the agent] intentionally searched for child pornography"); *United States v. Highbarger*, 380 Fed. Appx. 127, 131 n.5 (3d Cir. 2010) (suggesting that a search of files that an officer "knew, or expected" would contain child pornography would be outside scope of a warrant); *Mann*, 592 F.3d at 784 (considering whether officer intended to find child pornography in determining warrant's validity); *Giberson*, 527 F.3d at 890 (child pornography was admissible

## III.    Conclusion

For the foregoing reasons, the motion of defendant Paul Burdulis to suppress the evidence

obtained by the government from his computer systems is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: May 19, 2011

---

because it was "inadvertently discovered"). In *Carey*, an agent was searching under a warrant for drug-related images when he came across images of child pornography. 172 F.3d at 1273. By his own admission, the agent continued to search image files in the expectation that he would find child pornography. *Id.* The Tenth Circuit suppressed the child pornography in part because it "[was] not inadvertently discovered." *Id.*

Upon reconsideration, the Court believes that these cases run counter to the United States Supreme Court's holding in *Horton v. California*, 496 U.S. 128 (1990). In *Horton*, the Court explicitly held that "inadvertence" was not required by plain-view doctrine:

[E]venhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer. The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement.

496 U.S. at 138; *see also Williams*, 592 F.3d at 523 ("*Carey* . . . effectively imposes an 'inadvertence' requirement, . . . which is inconsistent with *Horton*."). Although the First Circuit has yet to address *Carey*'s holding, *Upham* strongly suggests that it would decline to adopt a special "inadvertence" requirement for computer searches. *Upham*, 168 F.3d at 535 ("[A] search of a computer and co-located disks is not inherently more intrusive than the physical search of an entire house for weapons or drugs."); *see also United States v. Ribeiro*, 397 F.3d 43, 53 (1st Cir. 2005) (stating that inadvertence is not a necessary condition of a plain-view seizure). The Court therefore declines to do so here.